*Decisions will be entered under Rule 50.*

ESTATE OF MYRON SELZNICK, DECEASED, BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, DAVID O. SELZNICK AND CHARLES H. SACHS, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14985. Promulgated November 28, 1950.

*Lucien W. Shaw, Esq.*, for the petitioners.
*E. A. Tonjes, Esq.*, and *L. C. Aarons, Esq.*, for the respondent.

SUPPLEMENTAL OPINION.

VAN FOSSAN, *Judge:* The respondent determined a deficiency of $384,634.05 in the estate tax liability of the Estate of Myron Selznick, deceased. On June 23, 1947, the executors of the Estate of Myron

Selznick petitioned this Court for a redetermination of the deficiency. The parties came to agreement and settled by stipulation many of the issues from which a large part of the deficiency arose. On April 1, 1949, a Memorandum Opinion of this Court was entered which sustained the respondent's inclusion in the gross estate under section 811 (c), Internal Revenue Code, of certain property transferred by the decedent in trust. That Memorandum Opinion was based on the recent decision in the case of *Commissioner* v. *Estate of Church*, 335 U. S. 651. On June 3, 1949, a decision of the Tax Court was entered that there was a deficiency in estate tax of $199,842.44. The petitioner appealed from that decision to the Court of Appeals for the Ninth Circuit, which remanded the proceedings to this Court. The nature of the cause under mandate is set forth therein, in part, as follows:

\* \* \* on stipulation of counsel for respective parties that the decision of the Tax Court should be vacated and the cause remanded to the Tax Court for further consideration:

On Consideration Whereof, It is now here ordered and adjudged by this Court that the decision of the said Tax Court of the United States in this cause be, and hereby is vacated, and that this cause be, and hereby is remanded to the Tax Court of the United States for further consideration in the light of the amendments of October 25, 1949 to Section 811 (c) and also subdivisions (d) and (g) of the Internal Revenue Code.

The amendments to the Code enact certain retroactive statutory changes in the law as affected by *Commissioner* v. *Estate of Church*, *supra*, relied on in our Memorandum Opinion vacated by the Court of Appeals for the Ninth Circuit.

The factual record we have before us is the same as in the prior proceedings and consists of the pleadings and a stipulation of facts with exhibits attached. The facts as stipulated are so found and in so far as they are pertinent to the issue remaining, are set forth below.

The parties have submitted additional briefs in which the argument is directed toward the issue new before us. viz:

Whether any part of the assets transferred by the decedent to a trust created by him on January 29, 1932, should be included in the decedent's gross estate under section 811 (c) or (d) or (g) of the Code, as amended by P. L. 378, 81st Cong. (1949).

### FINDINGS OF FACT.

The petitioners are the duly appointed and acting executors of the last will and testament of the decedent, Myron Selznick, who died on March 23, 1944. The Federal estate tax return of the decedent was filed with the collector of internal revenue for the sixth district of California on June 22, 1945.

On January 29, 1932, the decedent created a trust naming the Citizens National Trust and Savings Bank of Los Angeles as trustee.

Article II of the trust agreement reads as follows:

The Trustor agrees that as to the insurance policies delivered to the Trustee or which may hereafter be delivered to it:

To cause each and every policy intended to be made subject to this agreement and the trusts hereunder to be made payable to the Trustee by sufficient designation as beneficiary thereof, or in such other manner as the parties hereto and any insurer shall agree, and the Trustee assumes no responsibility for the sufficiency or effect of any instrument or agreement by which any policy shall be made payable to it.

Article III of the trust agreement provides, in part:

During the lifetime of the Trustor, MYRON SELZNICK, no sale or exchange of property which may at any time comprise the principal of the trust estate, and no change in the investments of the principal of the trust estate, shall be made by the Trustee except on the written order and direction of said Trustor or his duly authorized agent, _____, and said Trustor during his lifetime hereby reserves for himself and/or his agent to be designated from time to time, the right to direct, in writing, said Trustee as to the investment of all cash principal, in any securities and/or property whether or not the same may be approved and permissible by law for investment of trust funds under the laws of the State of California. * * * The Trustor hereby reserves the right by written instrument filed with the Trustee, to revoke said appointment of David O. Selznick and/or Loyd Wright, and to substitute other persons to act for and in lieu of David O. Selznick and/or Loyd Wright, in the capacities herein in this paragraph provided for them to act.

Article VI of the trust agreement provides, in part:

* * * [The trustees] shall, after sufficient cash or other securities have been deposited in this trust so that the income therefrom shall be sufficient, (until such time the Trustor agrees to pay said premiums himself), also pay any and all premiums on life insurance policies and/or contracts which may be transferred and/or delivered by the Trustor to the Trustee pursuant to the terms hereof, * * *.

Article VII of the trust agreement reads as follows:

This Trust is irrevocable. The entire net income received and derived from the trust estate and available for distribution hereunder shall be by said Trustee paid monthly or in other convenient installments as directed by the Trustor to MYRON SELZNICK for and during his lifetime; the said MYRON SELZNICK, however, reserves the right to direct the Trustee from time to time to credit, keep and add any and all income which, pursuant to the terms hereof, may be payable to him, to the principal of the corpus of the trust estate, by giving written instructions from time to time so demanding.

Article VIII of the trust agreement reads, in part, as follows:

From and after the death of the said MYRON SELZNICK, the entire net income received or derived from the trust estate and available for distribution hereunder shall go and be paid by said Trustee in equal monthly installments, as

follows: [There follows various provisions for the distribution of the trust income to the decedent's widow, daughter, parents, brothers and their children and a final provision for termination of the trust and distribution of the corpus and for remainder to charity on the failure of any of the heirs surviving.]

### Article VIII further provides that:

The Trustor reserves the right to change or substitute, from time to time, the said charitable institutions, by giving notice of such change or substitution to the Trustee in writing.

### Article XI provides as follows:

Notwithstanding the fact that this Declaration of Trust is irrevocable, the Trustor, for himself and on behalf of the beneficiaries, reserves the right to petition any court of competent jurisdiction at any time and from time to time to amend and/or construe the same; provided, however, that no amendment shall change the provisions of this trust which shall have the effect or which is intended to or shall cause the same to be construed to be or amend it to be a revocable trust rather than an irrevocable one.

The Trustor reserves the absolute right to cancel or cause to be cancelled, and revoke or cause to be revoked, any of the insurance policies herein referred to, or which may hereafter be added to this Trust, provided that he first obtain the written consent of any two of the following, to-wit: The Trustee, David O. Selznick and Loyd Wright; provided further, that upon any cancellation any cash surrender values received on any such policies, shall remain in and/or be added to the corpus of this Trust.

### Article XIII of the trust agreement reads as follows:

Any income accrued or undistributed at the termination of any trust or estate hereunder, shall belong and go to the beneficiary or beneficiaries entitled to the next eventual estate, in the same proportions as the principal hereof, provided, however, that it is an express condition of the trust herein created, which shall take precedence over any and all other provisions herein relative to the distribution of the trust estate, that the Trustee is authorized and empowered and may in its sole and absolute discretion, although it is not obligated so to do, from the net income and/or principal of the trust estate and in such manner as to it may seem equitable and just, pay a reasonable sum toward defraying either in whole or in part the expenses of the last illness and of the funeral of the Trustor and/or any specifically named or contingent beneficiary or beneficiaries under said Trust.

The decedent transferred assets to said trust as follows:

On January 29, 1932, decedent transferred to the trust, assets (other than life insurance contracts) having a value on the date of decedent's death of $152,951.83. After June 6, 1932, decedent transferred to said trust, assets (other than life insurance contracts) having a value on the date of decedent's death of $130,817.79, which amount it is stipulated and agreed, in any event, is properly includible in decedent's gross estate (and which represents $28.81 more than the amount reported in the estate tax return on account of said assets).

Decedent also assigned to the trust, prior to June 7, 1932, life insurance contracts owned by him, as follows:

| Policy No. | Name of issuing insurance company | Amount of policy |
|---|---|---|
| 4,330,590 | Mutual Life Insurance Co | $25,000 |
| 10,434,859 | New York Life Insurance Co | 25,000 |
| 10,484,860 | New York Life Insurance Co | 25,000 |
| 10,541,918 | New York Life Insurance Co | 50,000 |
| 62,036 | Peoples Life Insurance Co | 25,000 |
| 63,287 | Peoples Life Insurance Co | 5,000 |
| 198,328-R | Indianapolis Life Insurance Co | 10,000 |
| 102,324 | Indianapolis Life Insurance Co | 10,000 |
| 109,395 | Indianapolis Life Insurance Co | 5,000 |

The total proceeds of the life insurance contracts, as of the date of decedent's death, were $188,275.31, of which the portion allocable to premiums paid prior to January 10, 1941, was $148,805.10, and the portion allocable to premiums paid after said date was $39,470.21, which latter sum, it is stipulated and agreed, is in any event, includible in decedent's gross estate (and which represents $62.63 more than the amount reported in the estate tax return on account of said insurance).

As set forth in the declaration of trust, the net income of the trust was to be paid to Myron Selznick. The trustee paid various amounts to the decedent from time to time as follows:

| Date | Amount of payment | Date | Amount of payment |
|---|---|---|---|
| July 1, 1932 | $431.34 | May 2, 1936 | $480.00 |
| Jan. 11, 1933 | 1,589.04 | June 2, 1936 | 100.00 |
| Apr. 10, 1933 | 1,624.21 | July 3, 1936 | 1,357.59 |
| Sept. 2, 1933 | 811.03 | Aug. 3, 1936 | 3,244.81 |
| Dec. 5, 1933 | 819.47 | Sept. 3, 1936 | 500.00 |
| Jan. 2, 1934 | 146.97 | Sept. 21, 1936 | 71.53 |
| Apr. 3, 1934 | 2,410.62 | Cct. 7, 1936 | 1,212.46 |
| Aug. 16, 1934 | 1,422.41 | Nov. 6, 1936 | 457.40 |
| Sept. 5, 1934 | 1,334.95 | Jan. 9, 1937 | 3,026.45 |
| Nov. 2, 1934 | 1,262.59 | Feb. 5, 1937 | 3,700.93 |
| Dec. 2, 1934 | 459.22 | Mar. 3, 1937 | 30.17 |
| Feb. 1, 1935 | 2,448.77 | May 5, 1937 | 2,556.27 |
| Mar. 4, 1935 | 716.00 | July 6, 1937 | 153.07 |
| May 2, 1935 | 1,879.53 | Aug. 6, 1937 | 6,840.00 |
| Aug. 7, 1935 | 2,376.99 | Sept. 3, 1937 | 10,010.00 |
| Sept. 4, 1935 | 544.65 | Apr. 11, 1940 | 20,678.36 |
| Nov. 4, 1935 | 436.68 | June 6, 1940 | 745.04 |
| Dec. 4, 1935 | 1,571.99 | Nov. 8, 1940 | 700.00 |
| Jan. 4, 1936 | 23.98 | Mar. 18, 1942 | 1,000.00 |
| Feb. 4, 1936 | 714.90 | | |

On the date of decedent's death there were $1,138.36 of trust income on hand with the trustee which had accrued and which had not been distributed to the decedent.

It was stipulated that, depending upon this Court's decision with respect to the trust, the amounts includible in gross estate on account thereof will be as follows:

If the Court finds that neither the non-insurance assets nor the life insurance contracts transferred to the trust prior to June 7, 1932, are includible in gross estate, the amount includible in gross estate on account of the trust is $170,288 (which is $91.44 more than the amount included on account thereof in the estate tax return).

If the Court finds that the non-insurance assets transferred to the trust prior to June 7, 1932, are not includible in gross estate but that the life insurance contracts transferred to the trust prior to June 7, 1932, are includible in gross estate, then the amount includible in gross estate on account of the trust is $319,093.10.

If the Court finds that all of the assets transferred by decedent to the trust (including both non-insurance assets and insurance contracts) are includible in gross estate, the amount includible in gross estate on account thereof is $472,044.93.

The respondent determined in the notice of deficiency that all of the property transferred by the decedent to the trust created on January 29, 1932, should be included in the gross estate of the decedent pursuant to section 811 (c) of the Internal Revenue Code.

In the proceedings in the Court of Appeals for the Ninth Circuit the parties stipulated as follows:

This is an estate tax case and it presents the question whether property transferred to a certain trust should be included in the gross estate of decedent, pursuant to Section 811 (c), (d) or (g) of the Internal Revenue Code.

The Tax Court held that the property in question should be included in the decedent's gross estate under Section 811 (c) and based its decision solely on the *Church* case (*Commissioner* v. *Estate of Church*, 335 U. S. 632). The Tax Court's memorandum opinion was entered herein on April 1, 1949. Since that time Section 811 (c) has been amended and the rule of the *Church* case has been affected by the amendments. See Act of October 25, 1949, Public Law 378, 81st Cong., 1st Sess. In the circumstances it seems appropriate that the decision of the Tax Court be vacated and the cause be remanded to it for further proceedings.

Accordingly it is hereby stipulated that the decision below should be vacated and the case should be remanded to the Tax Court for further consideration in the light of the above-mentioned amendments to Section 811 (c), and also subdivisions (d) and (g).

\* \* \* \* \* \* \*

OPINION.

The issue is whether any of the assets transferred by the decedent, prior to June 7, 1932, to a trust created by him on January 29, 1932, should be included in the decedent's gross estate under section 811 (c) or (d) or (g) of the Internal Revenue Code, as amended by P. L. 378, 81st Cong. (1949).

The decedent created a trust to which he transferred income-yielding property and also certain insurance policies on his own life. We shall consider first whether the income-yielding property (referred to as the non-insurance assets) should be included in the gross estate under section 811 (c), and then the question of the includibility of the insurance assets under section 811 (g). We believe that the necessity for the treatment of the problem in its separate phases will be apparent from our discussion to follow.

Under section 811 (c) the result is determined in a large part by the exact statutory language which applies. The question is a narrow one and pertains only to a limited area in the history of the law, specifically, transfers between the dates March 3, 1931, and June 7, 1932. We shall make no attempt to review the entire judicial and legislative history of the various Code provisions mentioned herein.* Much of the confusion that has existed in the past concerning the various interpretations of what is now section 811, has no bearing on this controversy other than as a source of background material. The recent amendment to section 811 in the 1949 Act has done much to clear up the past confusion. In any event, it is a field which has been described as so fluid "that the wise remain undogmatic even when that is true." Paul, Federal Estate and Gift Taxation, (1942), page 338.

By the terms of section 7 (b) of P. L. 378, 81st Cong. (1949), section 811 (c), as set forth in the margin,[1] is made applicable to the estates of decedents dying after February 10, 1939. The decedent in these proceedings died in 1944 and his estate is, therefore, within the purview of the 1949 Act. Section 7 (b) of that Act further provides, however, that:

* * * The provisions of section 811 (c) (1) (B) of such code shall not, in the case of a decedent dying prior to January 1, 1950, apply to—

    (1) a transfer made prior to March 4, 1931; or

    (2) a transfer made after March 3, 1931, and prior to June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

The "amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516)" referred to above reads, in the pertinent part, as follows:

* * * including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom; * * *.

---

*Note: We may refer the reader to Tax Law Review, March 1950, page 309; 58 Yale Law Journal 825; 59 Yale Law Journal 395.

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

    o        *        *        *        *        *

    (c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH:

    (1) GENERAL RULE: To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) by trust or otherwise—

    *        *        *        *        *

    (B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; * * *

Those words were added to section 302 (c) of the 1926 Act as follows:

Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, [here was inserted the amendatory language of the joint resolution of March 3, 1931] except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*

The question, therefore, is whether or not the decedent "retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property." This is the applicable part of the amendatory language of the joint resolution of March 3, 1931, under which we are told by section 7 (b) of the 1949 Act, the transfer must fall if the property is to be included in the gross estate.

The facts in the light of which the precise statutory language must be interpreted may be summarily set forth as follows: On January 29, 1932, the decedent created an irrevocable trust to which (and prior to June 7, 1932) he transferred certain assets. The trust provided that:

\* \* \* The entire net income received and derived from the trust estate and available for distribution hereunder shall be by said Trustee paid monthly or in other convenient installments as directed by the Trustor to MYRON SELZNICK, for and during his lifetime; the said MYRON SELZNICK, however, reserves the right to direct the Trustee from time to time to credit, keep and add any and all income which, pursuant to the terms hereof, may be payable to him to the principal of the corpus of the trust estate, by giving written instructions from time to time so demanding.

\* \* \* \* \* \* \*

Any income accrued or undistributed at the termination of any trust or estate hereunder shall belong and go to the beneficiary or beneficiaries entitled to the next eventual estate, in the same proportions as the principal hereof, \* \* \*.

On the date of the decedent's death there were $1,138.36 of accrued trust income which the trustee had not distributed to the decedent.

As the law stood on January 29, 1932, when the trust was created, the decedent's estate would be taxable if he retained "the possession or enjoyment of, or the income from, the property." In the face of this language the decedent created this trust directing that he be paid the income "monthly or in other convenient installments as directed" by him. It would seem that to state the question thus, would provide the answer. But the petitioners contend that because the decedent did not receive *all* of the income from the trust which accrued during his life, he did not retain "the possession or enjoyment of or the income

**724**

from the property." That is, the petitioners contend that the decedent "* * * retained the right to the income only for a period which had to end *before* the end of his life. Therefore, under the language of section 302 (c), as it read on January 29, 1932, the transfer was not taxable." Petitioners concede that assets transferred to the trust after June 6, 1932, are includible in the gross estate.

The petitioners seeks to derive support for their position from the Committee Reports on the Revenue Act of 1932 and the respondent's regulations. The material part of the 1932 Act is set forth in the margin.[2]

The Committee Reports on the Revenue Act of 1932, 1939–1 (Part 2) C. B. 490, 532, reporting upon the amendment to section 302 (c) of the Act of 1926 (as amended by the Joint Resolution of 1931), read, in part, as follows:

The purpose of this amendment to section 302 (c) of the Revenue Act of 1926 is to clarify in certain respects the amendments made to that section by the joint resolution of March 3. 1931, which were adopted to render taxable a transfer under which the decedent reserved the income for his life. The joint resolution was designed to avoid the effect of decisions of the Supreme Court holding such a transfer not taxable if irrevocable and not made in contemplation of death. Certain new matter has also been added, which is without retroactive effect.

The changes are:

(1) The insertion of the words "or for any period not ascertainable without reference to his death." is to reach, for example, a transfer where decedent reserved to himself semiannual payments of the income of a trust which he had established, but with the provision that no part of the trust income between the last semiannual payment to him and his death should be paid to him or his estate, or where he reserves the income, not necessarily for the remainder of his life, but for a period in the ascertainment of which the date of his death was a necessary element.

    \*      \*      \*      \*      \*      \*      \*

The petitioners contend that the 1932 Act as it uses the phrase "or for any period not ascertainable without reference to his death" provides *for the first time* for a trust with reservation of "semi-annual" payments of income, and was new matter which was not retroactive. Changes (2) and (3) (which we have omitted for the sake of brevity) specifically state that they are each merely a "clarifying change."

---

[2] Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

    \*      \*      \*      \*      \*      \*      \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise. under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, \* \* \*.

Change (1) which is set out above, does not so state and from this petitioners conclude that Change (1) is new matter and not retroactive.

Further in support of this view, the petitioners rely on the administrative interpretation of the law in Regulations 105, sec. 81.18.[3]

There is opposed to petitioners' view the very purpose of the Joint Resolution of 1931, the language of which determines this issue. In *May* v. *Heiner*, 281 U. S. 238 (1930), the decedent had transferred property in trust, the income of which was to go to her husband for his life and then to her for her life. It was held that the property was not includible in the decedent's gross estate. The next year, on March 2, 1931, the Supreme Court handed down three *per curiam* opinions[4] based on *May* v. *Heiner, supra.* Those cases differed from *May* v. *Heiner, supra,* in that there was no intervening life estate, i. e., the income was reserved for the grantor with other disposition at death. This type of case is the same as the present situation except that here we have the payment provision resulting in the income accrued at grantor's death going to his beneficiaries. The point is that it was a reservation of life income which was before Congress when, on the very next day after the three *per curiam* decisions were rendered, the Joint Resolution of March 3, 1931, was enacted. The meaning of that Resolution was clear—the reservation of a life estate will bring the transferred property within the gross estate of the transferor. The petitioners' argument is that the language of the Joint Resolution of 1931 as it provides for a trust with income retained

[3] SEC. 81.18 Transfers with possession or enjoyment retained.—Except in the case of a bona fide sale for an adequate and full consideration in money or money's worth. the gross estate embraces (section 811 (c)) all property transferred by the decedent. whether in trust or otherwise. if he retained or reserved the use, possession, right to the income or other enjoyment of the transferred property, and if the transfer was made—

    (1) At any time after 10:30 p. m., eastern standard time. March 3, 1931, and such retention or reservation is for his life, or for such a period as to evidence his intention that it should extend at least for the duration of his life and his death occurs before the expiration of such period; or

    (2) At any time after 5 p. m., eastern standard time, June 6, 1932, and such retention or reservation is for any period mentioned in (1) or for any period not ascertainable without reference to his death.

A reservation for a "period not ascertainable without reference to his death" may be illustrated by a reservation of the right to receive, in quarterly payments, the income of the transferred property where none of the income between the last quarterly payment and decedent's death was to be received by him or his estate; or by a reservation of a life estate following a precedent estate for life or a term of years.

The use, possession, right to the income. or other enjoyment of the property will be considered as having been retained by or reserved to the decedent to the extent that during any such period it is to be applied towards the discharge of a legal obligation of the decedent, or otherwise for his pecuniary benefit.

If such retention or reservation is of a part only of the use, possession. income, or other enjoyment of the property, then only a corresponding proportion of the value of the property should be included in determining the value of the gross estate.

(See section 81.15.)

[4] *Burnet* v. *Northern Trust Company,* 283 U. S. 782; *Morsman* v. *Burnet,* 283 U. S. 783; *McCormick* v. *Burnet,* 283 U. S. 784.

did not cover the present trust; that to do so it took the full force of the language of the 1932 Act which was not retroactive; that the language of the 1932 Act as it states "or for any period not ascertainable without reference to his death" is the use of words in the statute which, for the first time, reaches this type of trust. In order to arrive at this argument, petitioners must first take the view that "reservation of income" requires every last cent of income to go to the decedent-grantor.

In our opinion, there is little to support this view other than reliance on the confusion and uncertainty that existed in 1931 and 1932 concerning the subject sections of the law. We need not now borrow that confusion or share ancient doubts. This is another day and another atmosphere in which the old language must be examined, for it was the *language* of the 1931 change that is revived by grace of the 1949 Act. In this connection, it is interesting to note that there was some doubt in Congress that the section of the 1949 Act providing specifically for the trusts created between March 3, 1931, and June 7, 1932, was at all necessary.[5] Had the provision not been adopted, it would have left trusts created during the critical period to be examined unqualifiedly under the new section 811 (c) (1) (B) which the petitioner tacitly admits would render these transfers taxable. It is apparent that in the 1949 Act, Congress meant only to give the pre-1931 trusts the benefit of reliance on *May* v. *Heiner, supra,* not to create any new basis for interpretation of the Joint Resolution of

[5] In the genesis of the 1949 Act, what is now section 7 (b) (2) thereof was apparently first brought to light on the floor of the Senate with the following colloquy:

Mr. GEORGE. Mr. President, the senior Senator from Colorado has some amendments to this section, I believe, and the senior Senator from Pennsylvania left with me an amendment which should now be considered. I send it to the desk and ask that it be stated. I might explain that it is intended to take care of those cases of transfers after March 3, 1931, and prior to June 7, 1932, at which time Congress, by appropriate resolution, undertook to prevent their existing in the future, but did not make that resolution retroactive to March 3, 1931. *I doubt whether it is necessary,* and I so stated to the Senator from Pennsylvania, but in order to make certain, I now offer the amendment. [Emphasis added.]

The PRESIDING OFFICER. The clerk will state the amendment.

The CHIEF CLERK. In the committee amendment on page 11, line 18, it is proposed to strike out "a new paragraph" and insert in lieu thereof "two new paragraphs," and at the end of page 11 to add a new paragraph reading as follows:

(3) Exception in the case of transfers after March 3, 1931, and prior to June 7, 1932: Property transferred after March 3, 1931 and prior to June 7, 1932 shall not be included in the gross estate under this subsection by reason of the fact that the decedent retained any of the rights described in the amendatory language in section 803 (a) of the Revenue Act of 1932 unless such property is includible by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

Mr. GEORGE. Mr. President, I should like to add that both the Senators from Pennsylvania are interested in this amendment. While I think it is precautionary, at the same time many very eminent lawyers in the State of Pennsylvania have insisted that this amendment be adopted. The committee has no objection to the amendment. [Vol. 95, Cong. Rec., p. 12990 (1949).]

1931 and subsequent law or to perpetuate the doubts that might have existed prior to 1949 as to their interpretation.

Perhaps the most damaging aspect of the petitioners' case is its failure to survive an appraisal of the substance of the transfer itself. All of the trust income accrued to the benefit of the decedent until his power to command the payment of that income was ended by his death. He could receive this income at any time and in any manner he desired merely by so requesting the trustee. Thus the decedent enjoyed the trust income during his life to the extent that he desired. No other person had any claim upon that income until the decedent's death and it was then determined how much income, if any, the decedent had not called upon the trustee to pay over to him. The decedent retained the right to the trust income until the time of his death. The income to which he had a right but which at his death he had not reduced to possession was no less "retained" by him.

In our opinion, and in the language of Joint Resolution of 1931, the decedent made a transfer by which he "retained for his life * * * the income from, the property * * *." We hold, therefore, that the non-insurance assets transferred by the decedent prior to June 7, 1932, to a trust created by him on January 29, 1932, are includible in his gross estate under section 811 (c) of the Code.

The next question for consideration is whether the proceeds of the insurance policies should be included in the decedent's gross estate. In addition to the income-yielding property transferred to the trust which we have held above should be included in the gross estate, the decedent transferred certain insurance policies to the trust, i. e., he made the proceeds of the policies payable to the trust on his death. The parties are agreed (but did not so stipulate) that the decedent paid the premiums on the policies, at least indirectly. Section 811 (g), as amended by the Revenue Act of 1942, and section 404 (c) of that Act apply and are set forth in the margin.[6]

---

[6] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

*       *       *       *       *       *       *

(g) PROCEEDS OF LIFE INSURANCE.—

*       *       *       *       *       *       *

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums. or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For the purposes of clause (A) of this paragraph, if the decedent transferred, by assignment or otherwise, a policy of insurance, the amount paid directly or indirectly by the decedent shall be reduced by an amount which bears the same ratio to the amount paid directly or indirectly by the decedent as the consideration in money or money's worth re-

As will be seen from the cited sections of the law, the proceeds of the policies allocable to premiums paid by the decedent before January 10, 1941, will be includible in his gross estate under section 811 (g) if he possessed any incident of ownership in the policies after that date. The petitioners have stipulated that the portion of the proceeds allocable to premiums paid after January 10, 1941, is includible. The question remaining is whether the portion of the proceeds of the policies allocable to premiums paid prior to January 10, 1941, is includible in the gross estate.

The term "incident of ownership" is not new in tax law. Its use in the 1942 Act involves a fundamental change, however, which reveals that the purpose of Congress was to cut "through elegant avoidance schemes." Paul, Federal Estate and Gift Taxation, 1946 Supp. Section 10:37. The Committee Reports on the 1942 Act, 1942-2 C. B. 491, 677, state that "Incidents of ownership are not confined to those possessed by the decedent in a technical legal sense." Prior to the 1942 Act, the regulations and the cases generally used the term "legal incidents of ownership", see Paul, Federal Estate and Gift Taxation, *supra*.

The trust contained the following provision:

The Trustor reserves the absolute right to cancel or cause to be cancelled, and revoke or cause to be revoked, any of the insurance policies herein referred to, or which may hereafter be added to this Trust, provided that he first obtain the written consent of any two of the following, to-wit: The Trustee. David O. Selznick and Loyd Wright; provided further, that upon any cancellation any cash surrender values received on any such policies, shall remain in and/or be added to the corpus of this Trust.

The respondent relies on the following language of his Regulations 105, Section 81.27 (as amended by T. D. 5239; 1943 C. B. 1094):

Incidents of ownership in the policy include, for example, the right of the insured or his estate to its economic benefits, the power to change the beneficiary to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. The insured possesses an incident of ownership if his death is necessary to terminate his interest in the insurance, as, for example, if the

---

ceived by the decedent for the transfer bears to the value of the policy at the time of the transfer. For the purposes of clause (B) of this paragraph, the term "incident of ownership" does not include a reversionary interest.

*    *    *    *    *    *    *

SEC. 404. PROCEEDS OF LIFE INSURANCE.

(a) GENERAL RULE.—Section 811 (g) (relating to life insurance) is amended to read as follows:

"(g) PROCEEDS OF LIFE INSURANCE.—

*    *    *    *    *    *    *

(c) DECEDENTS TO WHICH AMENDMENTS APPLICABLE.—The amendments made by subsection (a) shall be applicable only to estates of decedents dying after the date of the enactment of this Act; but in determining the proportion of the premiums or other consideration paid directly or indirectly by the decedent (but not the total premiums paid) the amount so paid by the decedent on or before January 10, 1941, shall be excluded if at no time after such date the decedent possessed an incident of ownership in the policy.

proceeds would become payable to his estate, or payable as he might direct, should the beneficiary predecease him.

The petitioners contend that if the decedent surrendered the policies the proceeds would inure to the benefit of the trust, not to the decedent. The respondent contends that this makes no difference, that the power alone to surrender the policies is a sufficient incident of ownership.

The insurance policies were made payable to the trust and the decedent reserved in the trust the power to cancel the insurance policies if he first obtained the written consent of any two of the following: The Trustee, David O. Selznick or Loyd Wright. But the decedent reserved the right to revoke the appointment of the last two named persons above and to "substitute other persons." It is true, as the petitioners contend, that the *proceeds* of the canceled policies would not immediately accrue to the decedent. But those proceeds would be invested by the trustee and the *income* therefrom would go to decedent for his life under the trust agreement. Further, the decedent reserved, in the trust, the right to direct the trustee as to the investment of the trust corpus (a part of which the canceled policies would become) and the investment directed by the decedent need not be "approved and permissible by law for investment of trust funds under the laws of the State of California."

It is apparent that the decedent could cancel the policies and the proceeds representing the cash surrender value would become a part of the trust corpus. Although the proceeds of the canceled policies would not inure to the decedent's benefit, the income therefrom (since he reserved the trust income for life) would go to the decedent from such investment of the proceeds as the decedent chose to direct. The right to receive the income from such property is an "incident of ownership" within the meaning of the statute.

In our opinion, the proceeds of the insurance policies allocable to premiums paid prior to January 10, 1941, are includible in the decedent's gross estate under the provisions of section 811 (g) of the Internal Revenue Code, and we so hold.

We have held above that the non-insurance assets are includible under section 811 (c) and the insurance assets includible under section 811 (g). In our opinion it is not necessary to consider whether the insurance assets should be included in the gross estate under section 811 (c), although it has been held that insurance is not includible exclusively under section 811 (g)[7]; that is, insurance has been held to have been transferred in contemplation of death under section 811

---

[7] See material collected in Paul, Federal Estate and Gift Taxation, 1946 Supp., section 1039, particularly the Committee Report reading: "[Section 811 (g) as amended in 1942] does not constitute the only section under which life insurance is includible in the gross estate."

(c). This aspect of the problem is not present here and in **our** opinion we have complied with the mandate as to section 811 (c) and **(g)** with our discussion above.

The above holdings are dispositive of all of the assets of the estate. It is, therefore, not necessary to consider whether they, or any of them, are includible under section 811 (d) of the Code.

*Decision will be entered under Rule 50.*