Major W. M. F. BAYLISS, Executor of the Estate of Kate Burwell Williams, Appellant,

v.

UNITED STATES of America, Appellee.

No. 9025.

United States Court of Appeals Fourth Circuit.

Argued Sept. 26, 1963.

Decided Jan. 3, 1964.

Walter E. Rogers and Frank W. Hardy, Richmond, Va. (Fielding L. Williams, and Williams, Mullen & Christian, Richmond, Va., on brief), for appellant.

John Douglas Clark, Jr., Attorney, Department of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Loring W. Post and George A. Hrdlicka, Attorneys, Department of Justice, and Claude V. Spratley, Jr., U. S. Atty., and Samuel W. Phillips, Asst. U. S. Atty., on brief), for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and NORTHROP, District Judge.

ALBERT V. BRYAN, Circuit Judge.

For Federal estate tax purposes, the executor of Kate Burwell Williams contends, there should not be included as a part of her estate, the personal property transferred by her under an inter vivos trust agreement. Section 2036(a) (1) of the Internal Revenue Code of 1954 brings property transferred in trust into the gross estate of a decedent settlor who reserves for himself a life interest in the income from the trust. Because of the date of the agreement, *February 25, 1932*, and the nature of Kate Williams' retained interest, the executor maintains that the property is excepted from the general rule under the limitation now contained in § 2036(b).

The relevant parts of 26 U.S.C. § 2036 (1958 ed.) are these:

"(a) *General rule.*—The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death —

"(1) the possession or enjoyment of, or the right to the income from, the property * * *.

"(b) *Limitation on application of general rule.*—This section shall *not apply to a transfer made * * * after March 3, 1931, and before June 7, 1932,* unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516)." (Accent ours.)

The amendatory language of the joint resolution of March 3, 1931, so far as pertinent is this:

"(c) * * * a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property * * *."

Rejecting the executor's position, the District Director of Internal Revenue assessed a Federal estate tax deficiency of approximately $60,934.15 and interest of $6,428.13. After payment of the additional assessment, the executor brought this action for its recapture.

The District Judge rightly denied recovery. In this we assume arguendo, as did the Court below, that the transfer became effective February 25, 1932 as the executor urges, rather than in 1938, as the Government contends, when the settlor's husband died. The trust agreement, we think, reserved to Kate Burwell Williams "for [her] life" the enjoyment of the trust property, and in that view, concededly, the trust property fell into the gross estate under the joint resolution of March 3, 1931.

The agreement named settlor's husband, E. Victor Williams, the American Bank and Trust Company and Catherine Murat Williams, as trustees, and contained these controlling provisions:

"2. Until the termination of the trust, the net income shall be distributed as follows by the Trustee:

"A. Periodically, *but not less frequently than once in each quarter-year, during the life of the Settlor,* Kate B. Williams * * * the net income from the Trust shall be paid to her.

"B. Periodically *thereafter,* but not less frequently than once in each quarter-year, the net income from the trust shall be paid to E. Victor Williams, during his lifetime * *.

\*   \*   \*   \*   \*   \*

"7.B. No beneficiary shall have any title or right or vested interest in or to any of the corpus or income of the Trust until the day upon which the Trustee shall, according to the terms of this instrument, pay such corpus or income to such beneficiary, and then only if such beneficiary be living on that day." (Accent ours.)

The final vesting of the estate, both as to income and principal, after the death of the settlor and her husband is definitely prescribed. By its terms the trust became irrevocable upon the death of E. Victor Williams in 1938. Settlor died January 12, 1955. Thus her death was in the quarter-year ending the last day of March 1955. Under the terms of the trust she was entitled to the income "not less frequently than once in each quarter-year"—the calendar quarter. The trustees had always paid her on the last day of each quarter. Consequently, she had not been paid for the first quarter of 1955 and the trustees were under no obligation to pay her the income for this quarter until March 31, 1955.

The title to the income for this quarter did not, because of § 7.B. of the agreement, become hers until it was actually paid to her. On this provision the executor takes the stand that the settlor did not under the agreement receive the income from the trust for her entire life, since at her death she was not vested with the income for the quarter in which she died. There was a gap extending from the end of the preceding quarter until her death in which she was not entitled to possession of the income. Thus, argues the executor, the settlor did not have a life estate in the trust and the agreement did not give her an interest for "any period not ending before [her] death" within the meaning of the joint resolution of March 3, 1931.

To support this interpretation of the statute, the taxpayer refers to the history of § 2036 of the Revenue Code and the joint resolution.[1] Section 302(c) of the Revenue Act of 1926, a predecessor of § 2036, was amended by the 1931 resolution by the addition of wording already quoted. In the Revenue Act of 1932, passed subsequent to the execution of the agreement, the language of § 302 (c) of the 1926 Act was further enlarged by the insertion of a clause regarding the periods of retention, so that this part of § 302(c) read, with the 1932 phraseology emphasized, as follows: " * * * under which he has retained for his life or *for any period not ascertainable without reference to his death* or for any period which does not, in fact, end before his death * * *." (Accent ours.) This new clause has been continuously carried through the revenue statutes ever since 1932.

This addition, argues the taxpayer, strongly implies that the Congress recognized that such a provision as is contained in the trust agreement was not a reservation for life or for any period not ending before death. Otherwise, continues the taxpayer, there would have been no reason for the 1932 amendment. In substantiation, he adverts to Treasury Regulations § 20.2036–1(b)[2] and the Senate Finance Committee Report[3] interpreting this portion of the 1932 amendment.

1. For a discussion of the origin and purpose of these statutes, see Commissioner v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288 (1949); Estate of Myron Selznick, post 15 T.C. 716 (1950), aff'd per curiam 195 F.2d 735 (9 Cir. 1952); 2 U.S.Code Cong. & Ad. News, pp. 2179–2180, 81st Cong., 1st Sess., 1949 (Technical Changes Act of 1949); 2 U.S.Code Cong. & Ad.News, pp. 2429–2430, 83rd Cong., 1st Sess., 1953 (Technical Changes Act of 1953).

2. Treasury Regulations § 20.2036–1(b) (1) provides in part:
"(b) Meaning of Terms—(1) A reservation by the decedent 'for any period not ascertainable without reference to his death' may be illustrated by the following examples:
"(i) A decedent reserved the right to receive the income from transferred property in quarterly payments, with the proviso that no part of the income between the last quarterly payment and the date of the decedent's death was to be received by the decedent or his estate; and * * *."

3. Senate Report No. 665, 72nd Cong., 1st Sess., 1939–1 C.B. (Part 2) 532 contains the following explanation of the changes made in the 1932 Revenue Act:
"(1) The insertion of the words 'or for any period not ascertainable without reference to his death,' is to reach, for example, a transfer where decedent reserved to himself semi-annual payments of the income of a trust which he had established, but with the provision that no part of the trust income between the last semi-annual payment to him and his death should be paid to him or his estate, or where he reserves the income, not necessarily for the remainder of his life, but for a period in the ascertainment of which the date of his death was a necessary element.
"(2) The insertion of the words 'or for any period which does not in fact end before his death,' which is to reach, for example, a transfer where a decedent, 70 years old, reserves the income for an extended term of years and dies during the term, or where he is to have the income from and after the death of another person until his own death, and such other person predeceases him. This is a clarifying change and does not represent new matter."

But whatever the reason for the 1932 amendment, we think there can be no reasonable doubt that a life estate was set up by the agreement for the use of the trustor. The trust provisions themselves explicitly spell out such an interest for Kate Williams. The agreement is altogether clear and definite in its intent and effect to retain for her the enjoyment of the income *throughout* her life. Until death it did not belong to anyone else. Trust Agreement § 2.B. Surely until her death it was potentially hers. Again, there was no hiatus in her enjoyment of the last quarter's income though her possession of it may have been prevented by death. Though not reduced to possession, the unreceived income was nevertheless something of value enjoyed by her. For instance, it was a favorable factor in determining her credit rating before her death, even in the last quarter. Thus, undoubtedly, settlor saved for herself a life estate in the income or certainly an enjoyment of income which would not end before her death.

If the argument of the taxpayer were accepted, the settlor would not have had a life estate though she had lived until a minute before the last day of the quarter, the due date of the payment. This is an exaction too nice and a distinction too fantastic for the rigorous realities of taxes. The want of sixty seconds or less should not in this setting be allowed to destroy the practical conception of a life tenure.

Support for our conclusion is lent by Estate of Myron Selznick, 15 T.C. 716 (1950), aff'd per curiam, 195 F.2d 735 (9 Cir. 1952). Selznick retained for and during his lifetime the net income from his own created trust, directing that it be paid to him monthly or in other convenient installments as he should direct. Upon his death his personal representative contended that Selznick did not have a life estate because he did not receive all of the income which accrued during his life, inasmuch as he had not directed how that income should be paid which had accrued at the time of his death.

"In order to arrive at this argument", said the Tax Court in denying it, "petitioners must first take the view that 'reservation of income' requires every last cent of income to go to the decedent-grantor." Quite sensibly, it seems to us, the Tax Court held that the joint resolution of 1931 brought the trust property into the general estate. Like reasoning requires us to overrule the argument of the petitioner here.

Affirmed.