ESTATE OF ESTHER S. MARSHALL, DECEASED, THOMAS C. MARSHALL, JR., AND LINDSAY GREENPLATE, EXECUTORS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Marshall v. Commissioner
Docket No. 13725-82.
United States Tax Court
T.C. Memo 1985-249; 1985 Tax Ct. Memo LEXIS 378; 49 T.C.M. (CCH) 1547; T.C.M. (RIA) 85249; May 28, 1985. Robert L. Lefton and Charles M. Allmond, III, for the petitioners. *379 David E. Gaston and Maureen C. Kopko, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice dated May 7, 1982, respondent determined a deficiency of $62,144.90 in the Federal estate tax liability of the estate of Esther S. Marshall. After concessions, the issue to be decided is whether the value of trust property is includible in decedent's gross estate under section 2036. [1]
FINDINGS OF FACT This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulated facts are incorporated herein by this reference. Esther S. Marshall ("decedent") died testate on December 5, 1979. Thomas C. Marshall, Jr., son of the decedent, and Lindsay Greenplate were the executors of the decedent's estate and were legal residents of Delaware at the time they filed the petition herein. The decedent's Federal estate tax return was timely filed on August 25, 1980, in Philadelphia, Pennsylvania. The controversy herein arises out *380 of a March 24, 1931, trust agreement which was entered into between the decedent, as settlor, and the National Bank and Trust Company of Kennett Square, a Pennsylvania corporation, as trustee. On that date decedent transferred to the trust fifteen bonds issued by various corporations and utility companies with a total face value of $73,000. At the time the trust was created and throughout her entire life, decedent was a resident of Delaware. In the first dispositive paragraph of the trust agreement, following a provision for expenses of administration and taxes, the trust purported to give to the decedent an income interest in the trust property for her life. The dispute herein centers on whether the sixth dispositive paragraph of the trust agreement (which described the manner by which payment of the income earned from the trust will be made to the decedent) reduced the decedent's interest in the trust property so that her interest did not rise to the level of a life income interest. The language of the First and Sixth paragraphs of the trust agreement and of the introductory language of the trust agreement is set forth below. THIS AGREEMENT, Made and entered into this Twenty *381 fourth day of March in the year of our Lord, one thousand nine hundred and thirty-one (1931). BY AND BETWEEN ESTHER S. MARSHALL, of Christiana Hundred, New Castle County and State of Delaware, party of the first part, AND NATIONAL BANK AND TRUST COMPANY OF KENNETT SQUARE, a corporation of the United States of America, party of the second part (hereinafter called the Trustee). WITNESSETH, That the said Esther S. Marshall, for and in consideration of the sum of One Dollar ($1.00) to her in hand paid by the Trustee at and before the sealing of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, transferred, assigned and set over and doth hereby grant, bargain, sell, transfer, assign and set over to and unto the said Trustee all and singular the personal property, stocks, bonds and moneys mentioned in the schedule hereto attached and marked "Exhibit A". TO HAVE AND TO HOLD the said personal property, stocks, bonds and moneys to the use of the said Trustee upon the following uses, trusts and conditions, that is to say:-- FIRST. IN TRUST to collect the income, interest and dividends thereof and therefrom and, after deducting the necessary expenses *382 of administering the said trust and all taxes properly paid and payable by the said Trustee, to pay the net income of and from the said personal property, stocks, bonds and moneys to and unto Esther S. Marshall, wife of Thomas Clarence Marshall, in monthly payments during the term of her natural life. * * * SIXTH. Whereas it is provided in this Trust Agreement that the income from said trust fund should be paid to the said Esther S. Marshall in monthly payments, said monthly payments shall begin at the expiration of six months from the date hereof; and whereas it is the desire and intention of the parties to this agreement that the time of payment of income from said trust fund should be made more certain, it is, therefore, understood and agreed by and between the parties hereto that the Trustee shall, on or about the First day of April and October of each year, render to the person entitled to receive such income a statement of all income received by it for the preceding six months; that at the same time the said Trustee shall pay to the said Esther S. Marshall one-sixth of the balance of said income in its hands as such Trustee, as shown by such statement, and shall *383 pay to the said Esther S. Marshall on the First day of each month for the next succeeding five months a further amount equal to one-sixth of the balance as shown by the said statement, and this arrangement shall continue for each period of six months during the life of the said Esther S. Marshall. Should the said Thomas Clarence Marshall not be living at the time of the death of the said Esther S. Marshall then such like monthly payments shall be made to the said Thomas C. Marshall, Junior, for and during the term of his natural life under the same terms and conditions. [Emphasis added.] * * * It is unclear from the record when, in what manner, and in what amounts the trustee made actual payments under the trust agreement. Since respondent does not raise a question as to the dates and manner by which actual payments under the trust agreement were made, we assume herein that they were made as described in the trust agreement. Under the six month, deferred payment scheme of the Sixth paragraph of the trust agreement, we assume decedent received on each of October 1, November 1, and December 1, 1979, one-sixth of the net income of the trust earned during the period April 1 *384 through September 30, 1979. It is not stated in the record herein who received the one-half of the annual net trust income earned during the period April 1 through September 30, 1979, that was not actually paid to decedent (because of her death); nor is it stated in the record who received the net trust income earned by the trust during the period October 1 through December 5, 1979, the date of decedent's death. Regardless of who actually received those amounts, the resolution of the issue in this case turns on whether the decedent or her estate, on the one hand, or the decedent's son as the successor-beneficiary under the trust agreement, on the other hand, were legally entitled to receive those amounts. OPINION Under the general rule of section 2036 the gross estate includes the value of property transferred by the decedent in which he retains a life estate. Section 2036(c) however provides a limited exception where the original transfer of property occurred after March 3, 1931, and before June 7, 1932. Specifically section 2036(c) provides as follows: (c) LIMITATION ON APPLICATION OF GENERAL RULE.--This section shall not apply to a transfer made before March 4, 1931; nor *385 to a transfer made after March 3, 1931, and before June 7, 1932, unless the property tranferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516). Property included in the decedent's gross estate is generally valued as of the date of the decedent's death. Section 2031. Accordingly trust property that is includible in a decedent's gross estate is to be valued as of the date of the decedent's death. The transfer by the decedent here in question occurred on March 24, 1931, and therefore under section 2036(c) the value of the trust property will be excluded from decedent's gross estate unless the property transferred by the decedent to the trust would have been includible in decedent's gross estate under the joint resolution of Congress dated March 3, 1931. The circumstances surrounding the joint resolution of March 3, 1931, and the enactment of the predecessor statutes to section 2036(c) have been explained fully in other opinions, and we find it unnecessary to repeat those explanations here. See for example, Commissioner v. Estate of Arents,297 F.2d 894, 897-899 (2d Cir. 1962), *386 revg. 34 T.C. 274 (1960); Estate of Selznick v. Commissioner,15 T.C. 716, 722-726 (1950), affd. per curiam, 195 F.2d 735 (9th Cir. 1952). [2]
We now turn to the language of the 1931 joint resolution and the question of whether the trust property in question herein would have been taxable under the joint resolution. If it would have been (for example, if the decedent had died in 1931 after the transfer in trust occurred thereby necessitating a computation of decedent's Federal estate tax liability in that year), then the value of the trust assets as of decedent's actual date of death in 1979 are includible in her gross estate under section 2036(c). The joint resolution (combined with section 302(c) of the Revenue Act of 1926) provided that property would be includible in the gross estate of a decedent if, among other things, the decedent who transferred the property retained for his life the right to the *387 income from the property. The pertinent language of the joint resolution (46 Stat. 1516) provides as follows: * * * including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom; * * * Those words were added to section 302(c) of the Revenue Act of 1926 as follows: Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated-- * * * (c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, [the amendatory language of the joint resolution of March 3, 1931 was inserted here]; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * * Respondent argues that under the First paragrpah of the trust agreement *388 decedent was entitled to the income from the property for her life and that the Sixth paragraph of the trust agreement did not reduce her interest in the trust income. Therefore, respondent asserts that the trust property would have been includible in decedent's gross estate under the joint resolution of March 3, 1931. Petitioners argue that since the payment to decedent of the trust income under the Sixth paragraph of the trust agreement was delayed (throughout the life of the trust) by six months, whenever decedent died she would not have received the trust income for the six months immediately preceding her death. Therefore, petitioners assert that decedent did not have a right to receive the income from the trust for her life and the trust property would not have been includible in decedent's gross estate under the joint resolution of March 3, 1931. Petitioners rely primarily on language contained in the Senate Finance Committee Report accompanying the Revenue Act of 1932. That act, among other things, further amended section 302 of the Revenue Act of 1926, to provide that where a transferor retains an interest in property for a period of time that falls short of the transferor's *389 death but where that period of time is measured by reference to the date of the decedent's death, the interest will be includible in the transferors' gross estate. The pertinent language from the Finance Committee report on which petitioners rely reads as follows: (1) The insertion of the words "or for any period not ascertainable without reference to his death," which is to reach, for example, a transfer where decedent reserved to himself semi-annual payments of the income of a trust which he had established, but with the provision that no part of the trust income between the last semi-annual payment to him and his death should be paid to him or his estate, or where he reserves the income, not necessarily for the remainder of his life, but for a period in the ascertainment of which the date of his death was a necessary element. [S. Rept. No. 665, 72d Cong., 1st Sess. (1939), 1939-1 C.B. (Part 2) 496, 532.] Petitioners argue that the trust provisions involved herein fall squarely within the example described in the above legislative history of an interest that was less than a life interest (under pre-1932 law) because of purported language in the trust agreement *390 that no part of the income of the trust from a date prior to the date of death up until the date of death is payable to the decedent or to his estate. We disagree. Under the example set forth in the cited legislative history the trust agreement expressly stated that neither the decedent nor his estate was entitled to receive the trust income accrued immediately prior to the date of decedent's death. No such language is found in the trust agreement in question herein. To the contrary, the only reasonable reading of the First and Sixth paragraphs of the trust agreement is that the decedent or her estate was entitled to receive all trust income earned during decedent's entire life. The Sixth paragraph simply provided a payment schedule for most of that income. How the trust income for the last few months of decedent's life was to be paid to her or to her estate was not expressly specified in the trust agreement, but there certainly was no language in the trust agreement that stated that any trust income earned by the trust prior to decedent's death was to be paid to anyone other than the decedent. The Second and Third paragraphs of the trust agreement are relevant to our *391 interpretation of the trust provisions. The Second paragraph provided that if the decedent was survived by her husband, Thomas Clarence Marshall, the trust would be terminated and all trust property and accrued income would be transferred to decedent's husband. No explanation is found in the Second paragraph as to whether the accrued income mentioned therein pertains to the income accrued prior to decedent's death or just to the income accrued after her death and prior to a transfer of the trust property to her surviving husband. [3]
The Third paragraph of the trust agreement, among other things, provided that if the decedent was not survived by her husband, decedent's son, Thomas C. Marshall, Jr., would receive the net *392 income from the trust property for his life. [4] The language of the Third paragraph does not suggest in any way that decedent's son was entitled to trust income accrued prior to decedent's death. *393 We previously have referred to the payment schedule that was established in the Sixth paragraph with respect to the decedent's income interest. The Sixth paragraph also established a payment schedule of trust income with respect to the surviving son's income interest similar to the payment schedule that was established therein for the decedent. [5] If the Sixth paragraph had stated that decedent's son was entitled to receive payments of trust income to which decedent would have been entitled had she not died, an argument could be made that the son was entitled to begin receiving monthly payments of trust income immediately upon decedent's death. Such payments, in the first six months after decedent's death, would have represented income accrued prior to decedent's death, thereby cutting off decedent's (or decedent's estate's) interest in the income earned by the trust a few months prior to decedent's death. However, the Third and Sixth paragraphs of the trust agreement, when read together, are quite clear that decedent's son was to receive an interest in the trust income separate from *394 the decedent's interest therein, and (under the payment schedule set forth in the Sixth paragraph with respect to the surviving son) the son's interest in the trust income was to be paid to him based upon a monthly schedule that was similar to, but independent from the payment schedule applicable to the income interest of his deceased mother. Thus, under our reading of the Sixth paragraph, the son's first monthly payment would be received by him at the expiration of six months after the date of decedent's death and would be based upon one-sixth of the net income earned by the trust over the six months since the date of decedent's death. The issue involved herein of whether trust property was includible in a taxpayer's gross estate under a predecessor statute to section 2036(c), because the trust assets would have been taxable under the joint resolution of March 3, 1931, has been addressed in a number of court decisions. Estate of Selznick v. Commissioner,15 T.C. 716 (1950), affd. per curiam, 195 F.2d 735 (9th Cir. 1952), involved a trust which provided that the settlor would be entitled to the income monthly or in other installments. The estate contended *395 that since the settlor had not actually received all of the trust income prior to his death under the monthly payment schedule, the settlor had not retained a life interest in the trust property and such property was not includible in the gross estate under the joint resolution. The Court held that the settlor of the trust had retained the right to the trust income until the time of his death because, "No other person had any claim upon that income until the decedent's death * * *." 15 T.C. at 727. Bayliss v. United States,326 F.2d 458 (4th Cir. 1964), also involved a trust established after March 3, 1931, and before June 7, 1932, and a life income interest retained by the settlor. The exact same arguments were made therein that petitioners in the instant case make. The fact that a question may have arisen under the periodic payment schedule set forth in the trust agreement as to who actually would receive the payment of trust income for the last few months of the settlor's life was held not to have diminished the settlor's retained life estate in the trust property. Similar to our holding herein the Fourth Circuit stated-- The agreement is altogether *396 clear and definite in its intent and effect to retain for [the settlor] the enjoyment of the income throughout her life. Until death it did not belong to anyone else. [Emphasis in the original.] [326 F.2d at 461.] We consider the trust provisions involved herein to be clear as they relate to the nature of decedent's interest in the trust property. The decedent retained a full life estate. No transfer of the trust income or property to any other individual occurred prior to her death. Although our interpretation of the trust agreement does not necessitate resort to the rules of construction under state law, our conclusion is supported thereby. Neither party herein has taken a position as to whether the law of Pennsylvania (as the apparent situs of the trust assets and the location of the trustee) or Delaware (as the residence of the decedent) would control a dispute that necessitated a construction of the trust agreement. However, the Seventh paragraph of the trust provides that Pennsylvania law will govern the trustee in all decisions concerning administration of the trust and, absent any direction from the parties to the contrary, we also have referred *397 to Pennsylvania law for guidance as to the interpretation a state court would make of the trust provisions involved herein. [6]
Under Pennsylvania law, it is well established that a life estate created under one provision of a trust agreement will not be reduced by language in a subsequent provision of a trust agreement unless there is a clear intention expressed by the settlor in the trust agreement to do so. In Re McManus' Estate,361 Pa. 122, 125-126, 63 A.2d 75, 76-77 (1949); In Re Moyer's Estate,361 Pa. 18, 22-23, 62 A.2d 919, 920-921 (1949); *398 In Re Garrett's Estate,321 Pa. 74, 76-77, 183 A. 785, 786 (1936); In Re Davidson's Estate,287 Pa. 354, 357, 135 A. 130, 131 (1926). One Pennsylvania decision concerned trust provisions similar to those in dispute herein. The court in In Re Davidson's Estate,supra, considered the argument that a life beneficiary's failure to collect before her death income accrued by the trust prevented such income from becoming part of the life beneficiary's estate. The surviving son asserted that although the income accrued prior to the life beneficiary's death, it was not actually paid until after her death and therefore did not become part of her estate. The court held that the decedent's life estate was not reduced by the failure of the life beneficiary to collect accrued income and explained-- the mere fact that the will directed the executors to render a statement to each of the devisees every three months did not affect the interest given, but merely established a convenient time for the rendering of an account or statement and to avoid the inconvenience of possible demands made at more frequent or at irregular periods. [287 Pa. at 357, 135 A. at 131.]
*399 See also In re Yates' Estate,281 Pa. 178, 126 A. 254 (1924). For the reasons set forth herein, we conclude that the trust property in question is includible in decedent's gross estate under section 2036. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. See also Bittker, "The Church and Spiegel Cases: Section 811(c) Gets a New Lease on Life," 58 Yale L.J. 825 (1949); Bittker, "The Church and Spiegel: The Legislative Sequel," 59 Yale L.J. 395↩ (1950).
3. The Second paragraph of the trust agreement provided-- SECOND. If at the time of the death of the said Esther S. Marshall her husband, Thomas Clarence Marshall, shall be then living the said Trustee shall transfer the personal property, stocks, bonds and moneys and all accured income thereon, held by it, the said Trustee, under the terms of this Agreement, unto the said Thomas Clarence Marshall absolutely, free and discharged from any and all trusts.↩
4. The Third paragraph of the trust agreement provides-- THIRD. IN TRUST, if at the time of the death of the said Esther S. Marshall her husband, Thomas Clarence Marshall, shall not be then living, then to pay the net income of and from the said personal property, stocks, bonds and moneys unto Thomas C. Marshall, Junior, in monthly payments for and during the term of his natural life and, at the death of the said Thomas C. Marshall, Junior, then to transfer the personal property, stocks, bonds and moneys held in trust under the terms of this agreement and all accrued income thereon to the heirs at law of the said Thomas C. Marshall, Junior, per stirpes and not per capita, absolutely, free of and discharged from any and all trusts; PROVIDED, HOWEVER, that the said Thomas C. Marshall, Junior, shall have the right to dispose of the said personal property, stocks, bonds and moneys and accrued income thereon, held by the Trustee under the terms and conditions of this Agreement, by his last Will and Testament as he may see fit.↩
5. The text of the Sixth paragraph of the trust agreement is set out on page 4, supra.↩
6. Our examination of the conflict of law rules of Pennsylvania and Delaware that pertain to the interpretation of trust agreements also indicates that the law of Pennsylvania would be utilized in resolving such a dispute. See Wilmington Trust Co. v. Wilmington Trust Co.,26 Del. Ch. 397, 24 A.2d 309 (1942); Wilmington Trust Co. v. Sloane,30 Del. Ch. 103, 54 A.2d 544 (Delaware Chancery Court 1947); Griffith v. United Air Lines, Inc.,416 Pa. 1, 203 A.2d 796 (1964); In Re Estate of Agostini,311 Pa. Super. 233, 457 A.2d 861↩ (1983).