ESTATE OF ELLIS BAKER, DECEASED, MORRIS A. AND MORTON E. BAKER, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63471. Filed June 30, 1958.

*C. Gordon Hainés, Esq.*, for the petitioner.
*Joseph N. Ingolia, Esq.*, for the respondent.

FORRESTER, *Judge:* The Commissioner has determined a deficiency in the amount of $10,053.54 in the estate tax of the estate of Ellis Baker, deceased. The sole issue remaining herein is whether the Commissioner erred in determining that a pro rata part of the proceeds of certain policies of insurance was includible in computing the gross estate for estate tax purposes. In view of the disposition by agreement between the parties of various other matters, a recomputation under Rule 50 will be required.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

Ellis Baker (hereinafter sometimes called the decedent) died on February 13, 1952, a resident of Baltimore, Maryland. Petitioners, decedent's sons, are the executors of his estate.

On June 29, 1926, and on July 15, 1926, the Union Central Life Insurance Company of Cincinnati, Ohio, issued to decedent policies of insurance on his life in the respective amounts of $4,000 and $40,000. Decedent made all payments of premiums to and including those due on the 1941 anniversary date of each policy. Such payments constituted 16 out of a total of 26 annual payments on each policy between its inception and the date of decedent's death.

On December 8, 1941, decedent gratuitously assigned the foregoing policies to his three children. The insurer was notified and changed its records accordingly.

Decedent filed a gift tax return for the calendar year 1941, including values attributed to the foregoing policies in respect and at the time of the above transaction, but, using part of his specific exemption, was neither required to nor did pay any gift tax. The assignees filed information gift tax returns for the same year and the two policies assigned as above described were not included in the estate tax return filed for decedent's estate.

Decedent paid no premiums on the assigned policies after the above 1941 assignment; all premiums from that time forward were paid by the assignees.

A part of the deficiency set out in the Commissioner's May 9, 1956, notice of deficiency to the petitioners resulted from his inclusion in the gross estate of $27,076.92 on account of the assigned policies.

OPINION.

The sole issue remaining herein is whether respondent erred in determining that the amount of $27,076.92, representing a portion of the proceeds of two insurance policies assigned by decedent in 1941, was includible in his gross estate for estate tax purposes.[1]  Respondent relies upon section 811 (g) (2) (A) of the Internal Revenue Code of 1939[2] as authority for his action.  Petitioners do not challenge respondent's computations, nor do they deny the applicability of the foregoing statutory provision.  Their sole challenge to respondent's action lies in their contentions that the statute, applied to the facts of this case, is unconstitutional.

Petitioners present essentially three arguments:

1. Section 811 (g) (2) (A) imposes a direct tax on property without apportionment, contrary to Article I, sections 2 and 9, of the Constitution of the United States.[3]

2. It constitutes an arbitrary and unreasonable discrimination against insurance, violating the due process clause of the Fifth Amendment to the Constitution.[4]

3. It is retroactive in effect as applied to this case so as to constitute a violation of the due process clause of the said Fifth Amendment.

The first two arguments were rejected by this Court in *Estate of Clarence H. Loeb*, 29 T. C. 22 on appeal (C. A. 2).  We held, as

---

[1] If so includible and if a gift tax had been paid in respect thereto, then the credit provided for by section 813 (a), (2) would have applied, said section providing in part: "[A]nd thereafter upon the death of the donor any amount in respect of such gift is required to be included in the value of the gross estate of the decedent * * * then there shall be creditd against the [estate]tax * *. * the amount of the tax paid under [the gift tax provisions] * * * with respect to so much of the property which constituted the gift as is included in the gross estate."

[2] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value * * * of * * *

* * * * * * *

(g) PROCEEDS OF LIFE INSURANCE.—

* * * * * * *

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, * * *

[3] CONSTITUTION OF THE UNITED STATES OF AMERICA, Article I, Section 2, Clause 3:

Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers, * * * Section 9, Clause 4:

No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken.

[4] CONSTITUTION OF THE UNITED STATES OF AMERICA, Amendment V:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

respects the first contention, that the tax in question was an excise and not a direct tax on property. We then concluded that life insurance is inherently different from other types of property, and Congress may properly treat it differently for purposes of the estate tax.

Having reviewed the *Loeb* case and authorities cited therein, we are convinced that the foregoing conclusions were correct. We do not perceive any material distinction between that case and the instant proceeding in respect of these questions, and can see no reason to depart therefrom.

We are strengthened in our view by the very examples cited by petitioners to demonstrate what they deem to be our error. They hypothesize (1) a gift of a $20,000 face value life insurance policy with a cash value of $10,000, and (2) a gift of a house worth $20,000 encumbered by a mortgage in the amount of $10,000. Petitioners find it "difficult indeed" to see how one assignment is more testamentary than the other. We experience no such difficulty. The donee in both cases receives an immediate equity worth $10,000. In the gift of life insurance, however, the donor's death will increase the value of such equity to $20,000. Such death is immaterial in the case of the second gift. Also, a proposed analogy between the assignment of an insurance policy and a gift of a bank account accumulated by deposits made by decedent is likewise invalid. The donee of the bank account immediately receives everything the donor purchased, i. e., the full principal plus any accumulated interest. The donee of an insurance policy receives by the *inter vivos* gift only a part of what the donor-insured purchased. An important value paid for by the insured—the increase to full face value—does not and will not come into being or pass until the death of the insured.

We are aware, as we were earlier, that the Court of Appeals for the Seventh Circuit has reached the contrary conclusion in *Kohl* v. *United States*, 226 F. 2d 381, and it is with the deepest regrets that we must once more decline to follow it. See *Arthur L. Lawrence*, 27 T. C. 713 (1957) on appeal (C. A. 9).

Petitioners finally argue that the effect of section 811 (g) (2) (A) in this case is unconstitutionally retroactive. We find this position similarly untenable.

It is not true, as petitioners seem to think, that the *Loeb* case did not deal with this question. The last paragraph of our opinion there reads in part as follows:

We note that the initial premiums on the insurance policies were paid prior to the amendment to the Revenue Act of 1942 which added the premium payments to section 811 (g). However, section 404 (c) of that Act specifically provided that any premium payments made subsequent to January 10, 1941, were to be included in determining what proportion of the proceeds was

attributable to premiums paid by the decedent. January 10, 1941, was the date that T. D. 5032, 1941–1 C. B. 427, was promulgated. T. D. 5032 amended the regulations at that time and in so doing explicitly taxed insurance to the estate of the insured under the premium payments test. The decedent was thus on notice, at the time he paid the initial premiums on the policies, that his estate might be taxed as a result of his indirect payment of the premiums. See *Colonial Trust Co.* v. *Kraemer*, 63 F. Supp. 866 (D. Conn., 1945). The retroactive effect of the premium payments test insofar as its application in this case is concerned, does not, we think, violate the due process clause of the Fifth Amendment. *Milliken* v. *United States, supra.*

Petitioners note in support of their contention that we did not consider the retroactivity issue in the *Loeb* case, or as an oversight if we did because of the fact that we did not cite *Nichols* v. *Coolidge,* 274 U. S. 531, or *Untermyer* v. *Anderson,* 276 U. S. 440.

In *Nichols* v. *Coolidge, supra,* the Supreme Court struck down section 402 (c) of the 1918 Act (conveyances to take effect, etc., at or after death) insofar as it purported to require inclusion in the estate of the value of property so conveyed prior to its enactment. The transfers were fully consummated, and in the words of the Court, were "not testamentary in character and beyond recall."

In *Blodgett* v. *Holden,* 275 U. S. 142, the Court held invalid the gift tax insofar as it applied to gifts made prior to its passage, fully consummated and not in contemplation of death. In *Untermyer* v. *Anderson, supra,* the same rule was applied where the gift had been made after the law had been presented to Congress for consideration, but prior to passage.

None of the above cases involved transfers of life insurance policies, and no law existed at the time of those transfers under which the tax there in question could reasonably be said to have been imposed.

In the instant proceeding, as in the *Loeb* case, we have before us life insurance policies, assets which by their very nature necessarily possess testamentary characteristics. The *inter vivos* assignment of such a policy immediately transfers rights, including the right to surrender for cash, but receipt of the face value of the policy— certainly an important reason why such policies are purchased— awaits the donor-insured's death, the most "testamentary" of all events. Not until such death is the main purpose of the policy or of its assignment completed. The transaction here in issue was, concededly, "beyond recall," but it is difficult to see how it can be seriously contended that it was "not testamentary."

Moreover, at the time of the 1941 transactions here (and the transactions in the *Loeb* case) a statute had been in existence for many years under which the premium payments test was, we think, a wholly resonable inerpretation. The test (as will be seen later) had been incorporated in one form or another in the regulations in effect during

most of the time during which the statute was in force, and was respondent's then current published policy. We did not cite the *Nichols* and *Untermyer* cases when deciding the *Loeb* case, because we did not deem them in point. Nor do we consider them to be pertinent here.

There are, to be sure, differences in the facts of the *Loeb* case and the instant proceeding, with respect to the question of retroactivity. In the *Loeb* case the policies had been originally applied for by the decedent's wife. No assignment ever occurred, the decedent never at any time possessing incidents of ownership in any of the policies. And he continued to pay (indirectly) at least the major portion of the premiums until his death.

The foregoing distinctions could well cause the *Loeb* case to be less than controlling on this question (retroactivity) in the case at bar.[5] Even disregarding that decision, however, we must nevertheless conclude that the application of section 811(g)(2)(A) here is not unconstitutionally retroactive.

The present body of estate tax law was introduced by the Revenue Act of 1916, which contained no reference as such to policies of insurance or proceeds thereof. Pub. L. No. 271, H. R. 16763, 64th Cong., 1st Sess. The Revenue Act of 1918, however, provided for the inclusion in the estate of insurance proceeds "(f) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under polices taken out by the decedent upon his own life." Pub. L. No. 254, H. R. 12863, 65th Cong., 3d Sess., sec. 402(f). This provision remained substantially unchanged until the Revenue Act of 1942.

Although the statute remained constant during this period, the regulations did not. Regulations 37 (1919 ed.), article 32, construed "taken out by the decedent" to mean policies upon which the decedent paid the premiums, but that conversely, proceeds of policies are excludible from the measure of the estate tax where "some other person or corporation" paid the premiums. This interpretation was continued in article 27 of Regulations 63 (1922 ed.), except that the exclusion of insurance proceeds was more narrowly worded, stating that such proceeds were excludible where "the beneficiary pays the premiums."

Regulations 68 (1924 ed.), article 25, expressly introduced a "premium payments test" rule, requiring apportionment where decedent

---

[5] But in *Loeb* the retroactive effect of the statute, if any, was as to premiums indirectly paid after January 10, 1941, and prior to October 22, 1942, while here such effect, if any, is as to the result of incidents of ownership possessed by decedent-insured between those dates. Said result here is inclusion as respects premiums paid by decedent-insured prior to January 10, 1941. These distinctions between *Loeb* and the case at bar do not alter the principle involved.

and beneficiary each paid part of the premiums. This was carried over into Regulations 70 (1926 ed.), article 25. In the 1929 edition of Regulations 70, however, while article 25 was retained in substantially the same form, article 27 was so amended as to introduce incidents of ownership as a second test, *in addition to* that based upon the payment of premiums.

This use of both tests continued into Regulations 80 (1934 ed.), with the additional provision that where premiums have been paid by "a person other than the beneficiary" the insurance is deemed to have been taken out by the decedent. The 1937 edition of Regulations 80 used incidents of ownership as the sole criterion, eliminating the premium payments test. T. D. 5032, 1941–1 C. B. 427, was thereafter promulgated on January 10, 1941, relying solely on payment of premiums and eliminating incidents of ownership as a criterion, except that where a decedent paid premiums on or before January 10, 1941, but possessed no incidents of ownership after that date (or at the date of his earlier death), payment of premiums prior to January 10, 1941, would not be considered as a ground for inclusion. Insurance was not deemed taken out by the decedent if he paid "no part of the premiums or other consideration." This was followed in Regulations 105, section 81.25, and substantially adopted as that part of the 1942 Act dealing with payments of premiums. The 1942 Act included both tests.

Thus, the regulations prior to the 1942 Act were in constant flux. At one time the test would be incidents of ownership, at another time it would be the payment of premiums, and at still another time both tests would be held to be in effect. In view of such vacillations the so-called "reenactment rule" can be of no assistance here. Cf. *Helvering* v. *Reynolds Co.*, 306 U. S. 110.

It cannot be seriously denied that prior at least to the 1942 Act that part of the estate tax respecting insurance proceeds was highly ambiguous. In such a case it is not only proper but quite desirable that the Commissioner issue regulations interpreting such provisions. To be sure, a regulation which, as a matter of law, is contrary to the legislation it purports to interpret is a nullity, and must be disregarded by the courts. *Manhattan Co.* v. *Commissioner*, 297 U. S. 129. But such a conflict is not lightly to be assumed, and if the regulation is a reasonable interpretation of the statute, it should be upheld.

T. D. 5032, *supra*, was in force when decedent assigned the policies in question. It appears clearly to require the inclusion sought here by respondent, and we do not understand petitioners to claim the contrary. They assert, however, that it was void because contrary to law. Their position is necessarily that the premium payments test was not

a permissible interpretation of the law prior to the Revenue Act of 1942. For petitioners to prevail, it must appear, since the statute remained substantially unchanged, that not merely T. D. 5032, *supra*, but every earlier regulation on the subject was illegal to the extent it used payment of premiums by the decedent prior to an assignment of a policy as a ground for including all or part of the proceeds in computing the gross estate subject to tax. We cannot agree with such a conclusion.

*Chase Nat. Bank* v. *United States*, 278 U. S. 327, did not hold, as petitioners seem to suggest, that the law prior to the 1942 Act could not be construed to require inclusion in the gross estate of proceeds of insurance over which a decedent retained no incidents of ownership. That case held that the tax in question was an excise upon transfers, and not a direct tax on property, and that the amount of tax resulting from the inclusion there in question did not bear an unreasonable relation to the subject matter of the tax. However, a statement by the Court (278 U. S. 337) in answer to the objection that the proceeds came from the insurer rather than the deceased deserves mention:

Obviously, the word "transfer" in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another. Sec. 402 (c) taxes transfers made in contemplation of death. It would not, we assume, be seriously argued that its provisions could be evaded by the purchase by a decedent from a third person of property, a savings bank book for example, and its delivery by the seller directly to the intended beneficiary on the purchaser's death, or that the measure of the tax would be the cost and not the value or proceeds at the time of death. * * *

To the extent the Court had before it a case in which incidents of ownership or control had in fact been retained, it did not have to look further for a proper subject of taxation. It does not follow that such result is tantamount to a holding that absent such retention the tax would not apply. That case sustained the tax as applied to the facts there; it did not hold the tax inapplicable to other facts.

The premium payments test does not appear to be an unreasonable interpretation of the estate tax provision respecting insurance, as it stood prior to the 1942 Act. Cf. *Helvering* v. *Reybine*, 83 F. 2d 215 (C. A. 2), modifying 31 B. T. A. 314.

Life insurance is unique. It inherently possesses, unlike other forms of property, some testamentary qualities. Even an outright *inter vivos* transfer of an existing policy on the life of the transferor, when gratuitously made in favor of the natural objects of his bounty, necessarily carries with it some element of a bequest.

Congress itself has recognized this inherently testamentary aspect of life insurance. In the report accompanying the Revenue Act of 1942, it said (H. Rept. No. 2333, 77th Cong., 2d Sess., p. 57):

Section 404 of the bill amends the existing law governing the inclusion of the proceeds of life insurance in the gross estate of a decedent. The amendment not only eliminates the existing exclusion of $40,000 * * * but also sets forth explicitly the criteria of their includibility in the gross estate. Recognizing the *testamentary nature of insurance* on the life of the decedent, *both* where premiums are paid, directly or indirectly, by him *and* where he possessed at the time of his death some incident of ownership, your committee proposes to include all proceeds of such insurance in the gross estate. [Emphasis supplied.]

Courts, too, have long recognized this aspect. In *Colonial Trust Co.* v. *Kraemer*, 63 F. Supp. 866 (D. Conn., 1945), the court said at page 873:

Perhaps more plausible is the argument that it is not sensible to impute to Congress an intent to include within the scope of an estate tax a transfer of legal interests which, in a case such as this, where the decedent had no right of reverter, appears to have been a completed transaction inter vivos. This argument, however, neglects the testamentary aspects of transactions involving life insurance policies, the characteristic noted in the passage from the opinion in the Chase National Bank case quoted above. The same thought was developed in Bailey v. United States, Ct. Cl., 27 F. Supp. 617, at page 621, in the following language:

"Life insurance is inherently testamentary in character. The payment of premiums and the insured's death are the necessary events giving rise to the full and complete possession and enjoyment of the face amount of the policies by the beneficiary. The acquisition of life-insurance policies on one's own life is a substitute for a testamentary disposition of property, and to allow an insured to avoid the estate tax upon his estate by making an assignment of policies taken out by him, and upon which he paid the premiums at a time when the statute required the inclusion of the proceeds of such policies in his gross estate, would be contrary to the clear language of the statute. Compare Burnet v. Wells, 289 U. S. 670, 53 S. Ct. 761, 77 L. Ed. 1439."

The thought is susceptible of further development. But first it should be noted that the problem here is not concerned with insurance intended and effective for the protection and personal benefit only of the insured; we are concerned here with insurance taken out for the benefit and protection of others than the insured. In practical effect that objective can be as well accomplished by the transfer of an insurance policy to the beneficiary named therein as by a legacy under a will. In a broad sense a life insurance policy represents an investment acquired by installment payments over a period of years which is analogous to a portfolio of securities which a decedent may have accumulated during his life-time by outright purchase, piece by piece, and which is available for transfer inter vivos or by will. And the one investment is as well adapted as the other for devotion to the benefit and protection of selected beneficiaries. In either form the full benefit of the investment accrues to the beneficiary only on the death of the decedent.

An absolute assignment of such a policy even where as here there is no possibility of reverter to the assured, does not destroy the essential testa-

mentary quality of the transaction. To be sure, since such an assignment lacks the ambulatory quality of a will, the immediate effect is to confer a greater benefit upon the beneficiary than accrues to a named legatee upon the execution of a will. Such a beneficiary may become entitled to the cash surrender of the policy and thus have something of value which may be assigned or pledged. Nevertheless, the value thus acquired is substantially less than the amount of the policy payable in cash upon the death of the assured. And this residuum of value, like the value of a testamentary disposition, accrues only at the death of the assured. This incident of the transaction may well have been in the mind of the court when in Tyler v. U. S., 281 U. S. 497, 503, 50 S. Ct. 356, 359, 74 L. Ed. 991, 69 A. L. R. 758, it indicated that the test of constitutional taxability is not whether there has been in the strict sense a "transfer" but "whether the death has brought into being *or ripened* for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result." (Italics added.) See also Paul, Vol. I, p. 525. It thus appears that it was by no means inappropriate for Congress to include this section of the Act, which has such a strong testamentary savor, under that title of the Revenue Act which provides for the imposition of an estate tax.

We are aware that on two subsequent hearings (30 F. Supp. 184 and 31 F. Supp. 778) the Court of Claims so modified its stand in the *Bailey* case, cited and quoted in *Colonial Trust Co.* v. *Kraemer*, *supra*, that it appears to have expressed a view at odds with that for which its earlier opinion was so cited. We believe the views as expressed by the District Court in the *Colonial Trust Co.* case to be correct, notwithstanding any failure on the part of the Court of Claims to adhere thereto.

Petitioners also seek to distinguish the *Colonial Trust Co.* case on the ground that the decedent there retained until death control over the policy (by paying premiums until death). However, the court did not choose to rest its decision upon that ground, but based the result upon the premium payments rule as such. It does not cease to be persuasive on that point because (as in the *Loeb* case) the same result was required for another reason as well.

Petitioners also contend that the term "all other beneficiaries" in the statute prior to 1942 cannot properly apply to "assignees," and cite for that proposition *Guettel* v. *United States*, 67 Ct. Cl. 613. A construction so restrictive would so facilitate avoidance that we cannot but be convinced that Congress intended no such result.

In support of this argument petitioners have also cited *Frick* v. *Lewellyn*, 298 F. 803 (W. D. Pa.), affd. 268 U. S. 238, and have quoted the District Court as having said (298 F. 807):

If these words are given their ordinary meaning and significance, Congress did *not* intend to include in the gross estate life insurance policies which, at the time of death, formed no part of the decedent's estate, and which the executors had no right to collect. [Emphasis supplied.]

The word "not" does not appear in the case as reported, and was apparently introduced into petitioners' brief by error. In any event,

we do not regard the case as authoritative on the issue now before us. The District Court held section 402 (f) of the Revenue Act of 1918 unconstitutional insofar as it purported to include in the computation of the gross estate proceeds of certain insurance policies, including some with respect to which decedent had retained until death the power to change the beneficiary. This latter holding is so clearly out of harmony with current authority that the entire decision loses stature as persuasive authority. Furthermore, the result was affirmed by the Supreme Court solely on the basis of statutory construction, i. e., that the foregoing provision applied only in the case of transfers taking place after its enactment. The Supreme Court then said (268 U. S. 251) : "We do not propose to discuss the limits of the powers of Congress."

The foregoing convinces us that the premium payments test was not an unreasonable interpretation of the law as it stood prior to 1942. T. D. 5032, *supra*, is not illegal and void. Thus, even if we analyze the retroactivity issue by reference to the 1941 transfer rather than the date of decedent's death in 1952, we must conclude that no tax is here retroactively imposed. In 1941 an ambiguous statute was in effect, and a regulation, constituting a reasonable interpretation thereof, required the inclusion now in issue. Section 404 of the 1942 Act expressly adopted the premium payments test thus reasonably implicit in earlier law and expressed in earlier regulations, among them one in force on the date decedent assigned the policies (and one in force when the policies were first taken out). See H. Rept. No. 2333, 77th Cong., 2d Sess. (1942), p. 162, where the following paragraph appears:

This section is designed to clarify the status of proceeds of life insurance under the estate tax. * * * The section also eliminates the phrase "policies taken out by the decedent," which has produced confusion and unnecessary litigation.

Similar language appears in the Senate Finance Committee Report (S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), p. 234).

T. D. 5032, *supra*, provided that where a decedent had no incidents of ownership after January 10, 1941 (its date of promulgation), premium payments prior thereto would not be taken into account. Inasmuch as the premium payments test had been mentioned by a number of earlier regulations (although not by that in force immediately preceding T. D. 5032), we doubt that the foregoing exception or exemption was required as a matter of constitutional or statutory law. Nonetheless, it was granted, and was maintained in the Revenue Act of 1942. Petitioners' position, in effect, requires a holding that it would violate the Constitution not to extend this exemption to the case of petitioners' decedent.

The foregoing is made apparent by a careful examination of petitioners' argument that respondent is trying to tax decedent's estate on the basis of a transfer in December 1941, almost a full calendar year prior to enactment of the 1942 Act. In fact, petitioners rather than respondent seek to rely on events occurring in 1941.

Had no transaction taken place in 1941, there can be no serious doubt that the *entire* proceeds of the policies would have been includible in the gross estate. Respondent does not have to, and does not, rely for inclusion on the 1941 transfer. He concedes that the assignments divested decedent of incidents of ownership, that the assignees thereafter paid the premiums, and that hence a *pro tanto* part of the proceeds is excludible. He admits that to a limited extent a *tax-saving* event took place. Petitioners seek to remove any limit. They insist that the transfers prevented (necessarily at once) any includibility, and that it is unconstitutional to give to the 1941 activity any less effect.

We cannot find in the facts before us any retroactive taxation or violation of constitutional rights. If section 811 (g) (2) (A) is retroactive (and we do not believe it is), it is so only with respect to a period in which the existing statute, properly interpreted by respondent's regulations, required the same result under the facts of this case. Respondent must be sustained on this issue.

For the reason heretofore mentioned and since, under Rule 51, petitioners, having raised that issue in their petition, may now move for further trial if unable to agree upon a deduction involving expenses incurred at or after the trial herein,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

